## A93A0151. PORTER et al. v. THE STATE.
## A93A0152. STRICKLAND v. THE STATE.
### (432 SE2d 629)

BLACKBURN, Judge.

These are two appeals from the convictions of four co-defendants for trafficking in cocaine. In the case of *Porter v. State*, Case No. A93A0151, three co-defendants, Porter, Lott, and Hutcheson, appeal their convictions. In *Strickland v. State*, Case No. A93A0152, Strickland appeals his conviction. We combined the cases because all four co-defendants were tried together and raise substantially the same issues on appeal.[1]

The evidence used against the defendants was obtained as a result of two investigative warrants, issued by the Gwinnett Superior Court, which authorized a wire interception of three telephone lines. The defendants moved to suppress the tape recordings and the evidence resulting therefrom on the grounds that the warrants allowing the interception and the procedures used for the interception, recording, and storing violated state and federal law.[2] The trial court denied defendants' motion to suppress and defendants were convicted of trafficking in cocaine at the subsequent trial.

1. In their first enumeration of error, all defendants argue that the trial court erred in denying their motion to suppress due to the violations of federal and state law requirements for interception of wire transmissions. Defendants argue initially that the recordings obtained pursuant to the interception warrants were not submitted immediately upon completion to the superior court for judicial sealing as required by 18 USC § 2518 (8) (a).[3]

Pursuant to the warrants, interceptions were conducted from February 20, 1991 until March 7, 1991. The tapes were not delivered to the superior court judge for sealing until March 28, 1991. On March 28, 1991, the superior court judge inspected the 81 tapes, containing communications intercepted pursuant to the interception warrants, which were brought to him in a sealed condition, having been sealed at some point by the police. The tapes were then sealed in

---

[1] Defendant Strickland raises several grounds for reversal of his conviction in addition to those raised by his three co-defendants; however, because of our holding below, those grounds need not be reached.

[2] See OCGA § 16-11-64 and 18 USC § 2518. Georgia law "must meet the minimum standards of [federal law] in protecting privacy but may impose more stringent requirements and any interception must conform to both the state and federal law." *Ellis v. State*, 256 Ga. 751, 754 (353 SE2d 19) (1987).

[3] On appeal, the state argues, for the first time, that defendants Lott and Strickland have no standing to challenge the investigative warrants. However, we will not consider issues raised for the first time on appeal. *Ga. Dept. of Natural Resources v. Coweta County*, 261 Ga. 484 (405 SE2d 470) (1991); *Fathers Are Parents Too v. Hunstein*, 202 Ga. App. 716 (415 SE2d 322) (1992).

boxes in the trial judge's presence and under his directions. The state offered no explanation for the delay in taking the tapes to the court, other than the testimony of Officer Zimmerman, the lead investigator, who testified that he was unaware that federal law required that the tapes be submitted immediately to the court for sealing.

Federal law requires that "[t]he recording of the contents of any wire, oral, or electronic communication under this subsection shall be done in such way as will protect the recording from editing or other alterations. *Immediately* upon the expiration of the period of the order, or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions. Custody of the recordings shall be wherever the judge orders." (Emphasis supplied.) 18 USC § 2518 (8) (a). "Section 2518 (8) (a) has an explicit exclusionary remedy for noncompliance with the sealing requirement, providing that '(t)he presence of the seal provided for by this subsection, or a satisfactory explanation for the absence thereof, shall be a prerequisite for the use or disclosure of the contents of any wire, oral, or electronic communication or evidence derived therefrom under subsection (3) of section 2517.' " (Footnote omitted.) *United States v. Ojeda Rios*, 495 U. S. 257, 260 (110 SC 1845, 109 LE2d 224) (1990) quoting 18 USC § 2518 (8) (a). The question in the case sub judice then becomes whether the sealing of the tapes by the police, which condition is later inspected by and approved by the judge issuing the warrant is sufficient to meet the requirements of immediate judicial sealing of the tapes as prescribed by 18 USC § 2518 (8) (a).

In *Ojeda Rios*, the Supreme Court addressed whether tapes which bore seals should be suppressed because the seals had not been attached immediately as required by the statute. *Ojeda Rios*, supra, 495 U. S. at 260. Therein, the government put tapes in sealed boxes for 82 and 118-day periods prior to taking them to the Court for sealing.[4] The Supreme Court emphasized that 18 USC § 2518 (8) (a) "provides that 'the seal *provided for by this subsection*' (emphasis added) is a prerequisite to the admissibility of electronic surveillance tapes. The clear import of these provisions is that the seal required by § 2518 (8) (a) is not just any seal but a seal that has been obtained *immediately* upon expiration of the underlying surveillance order." 495 U. S. at 263. The Court reasoned that "the seal [was] a means of ensuring that subsequent to its placement on a tape, the Government

---

[4] In *United States v. Vazquez*, 605 F2d 1269, 1278 (2d Cir.) cert. denied 444 U. S. 981 (100 SC 484, 62 LE2d 408) (1979), the Court noted that a sealing achieved one to two weeks after a wiretap warrant expired could not be considered "immediate" in that sealing was often possible within one or two days. In *Vazquez*, the delays in judicial sealing ranged from seven to thirteen days. The Court determined that absent a "satisfactory explanation" the law required that sealing after such delays mandated suppression of the tapes. Id.

[had] no opportunity to tamper with, alter, or edit the conversations that [had] been recorded. It is clear . . . that Congress viewed the sealing requirement as important precisely because it limits the Government's opportunity to alter the recordings." Id. Thereafter, the Court concluded "that 2518 (8) (a) applie[d] to a delay in sealing, as well as to a complete failure to seal, tapes." Id. at 264.

The state admits that the tapes were not judicially sealed until March 28, 1991; however, it argues that the tapes were "sealed"[5] by the officers monitoring the surveillance recorders when the tapes were removed from the recorders. The tapes were then sealed in evidence bags and stored in a locked room with a locked steel door. The state asserts that all the requirements of § 2518 (8) (a) were met, but in reverse order, i.e., the tapes were sealed at the earliest possible moment and then made available to the court, rather than making the tapes immediately available to the court for sealing.

We do not agree that the sealing of the tapes performed by the officers can replace the immediate judicial sealing required by the statute. The purpose for having the tapes sealed immediately by the judge is to protect private citizens from the police. It follows therefore that to approve the immediate sealing of the tapes by the police, in lieu of the judge, would destroy the protective scheme established by the statute, as only the word of the police officer would be available to establish when such sealing occurred.

The officers' "sealing" of the tapes did not strictly adhere to the statutorily prescribed procedures for the sealing of tapes containing conversations intercepted pursuant to 18 USC § 2518. The primary purpose behind the requirements contained in § 2518 (8) (a) "is to ensure the reliability and integrity of evidence obtained by means of electronic surveillance." *Ojeda Rios*, supra at 263. Allowing the state to perform the sealing process and then submit it for judicial approval, whenever it is ready, presupposes the need for strict supervisory requirements. "The immediate sealing and storage of recordings of intercepted conversations *under the supervision of a judge*, is an integral part of [the] statutory scheme. (Emphasis supplied.) *United States v. Gigante*, 538 F2d 502, 505 (2d Cir. 1976). "Section 2518 (8) (a) provides for *continuous* judicial scrutiny of the entire process of obtaining and utilizing recorded conversations, and consequently requires their presentation to a judge 'immediately' — as the statute insists — upon the expiration of the authorizing order." Id. at 506.

The state next argues that "[s]ometimes when Administrative requirements of the wiretap warrant statutes are not complied with, the

---

[5] Investigator Zimmerman testified that the officers sealed the tapes by "[knocking] out the little record tabs to where it [the tape] could not be recorded over again. . . ."

burden is shifted to the defendants to show prejudice." However, this argument was specifically rejected in *Ojeda Rios*, supra. See also *King v. State*, 262 Ga. 147 (414 SE2d 206) (1992),[6] wherein the Georgia Supreme Court adopted the analysis of the Supreme Court stated in *Ojeda Rios*.[7] The citizens of Georgia have the right to expect strict compliance with those statutes allowing invasions into their constitutionally protected rights. In *Ojeda Rios*, the Supreme Court determined "that proof of non-tampering could not substitute for a satisfactory explanation of the delay in transmission." *King*, supra, 262 Ga. at 148. The Supreme Court held that the tapes should be suppressed unless the government had satisfactorily explained "not only why a delay occurred but also why it [was] excusable." *Ojeda Rios*, supra at 265. In the present case, the state offered no explanation as to why the delay occurred other than that they were unaware of the immediacy requirement. The state's sloppy compliance with the requirements set forth in 18 USC § 2518 is not excusably explained by an assertion that they were unaware of the requirements. Each department of the state which was involved with the present wiretapping operation; the police, the district attorney, and the judge, is charged with knowledge of the law. This is the case especially when their conduct is potentially violative of the privacy rights guaranteed by the Constitutions of the United States and Georgia. It is the duty of those who enforce the law to follow it and ignorance thereof can no more excuse the conduct of the state than it would excuse the conduct of the defendant. Where statutory procedures are established for the protection of private citizens, such citizens are entitled to the full benefit thereof and to compliance therewith by the state, without the necessity of showing harm by the state's failure to comply with the law. The state is required to strictly follow the procedures provided by law for the same reason a private citizen is entitled to such compliance and that is because the legislature has established the procedure and that is the law. It would be ironic indeed if only private citizens were required to follow the law while "law enforcement" officers were free to obey at their pleasure. If anything, a higher duty of compliance rests on those whose responsibility it is to enforce the law than it does on those who have no such duty. It is the responsibility of the trial court to ensure that procedural safeguards, statutorily provided,

---

[6] The state argues that *King* does not apply because in *King*, there was no evidence that the court inspected or adopted the seals applied by the officers. However, subsequent judicial review is not sufficient; the sealing of the tapes by the officers, in the case sub judice, cannot replace the *immediate judicial sealing* required by § 2518 (8) (a).

[7] We are aware that the fifth circuit adopted a contrary view in *United States v. Sklaroff*, 506 F2d 837 (5th Cir.), cert. denied 423 U. S. 874 (96 SC 142, 46 LE2d 105) (1975). However, both the United States Supreme Court and the Georgia Supreme Court now support our holding in the case sub judice. See *Ojeda Rios*, supra; *King*, supra.

are strictly complied with and it is the duty of the district attorney and the chief law enforcement officer of the county to ensure that their personnel are properly trained and that they follow the law.

The state's failure to follow the clear mandate of 18 USC § 2518 (8) (a) is fatal to its ability to "use or [disclose] the contents of any wire, oral, or electronic communication or evidence derived therefrom . . ." in this matter. Id. The defendants' motion to suppress clearly should have been granted by the trial court and it is not even a close question.

2. Next, all defendants argue that the warrant allowing the wire interception was insufficient on its face because it did not contain provisions for minimization as required by 18 USC § 2518 (5). "Every order and extension thereof shall contain a provision that the authorization to intercept shall be executed as soon as practicable, and shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter." 18 USC § 2518 (5).

The state admits that the warrant did not contain minimization provisions; however, it argues that the wire interceptions were conducted in such a way as to minimize the intrusion. A minimization provision in the order authorizing the interception is statutorily required and it is the duty of the judge executing the warrant to ensure that it strictly complies with such statutory requirements and of the trial judge to suppress evidence not obtained in strict compliance with the law.

3. During the hearing on the defendants' motion to suppress, the state "stipulated" that the evidence presented on the charge set forth in the indictment was based upon information acquired as a result of the wiretapping. The state further stated that it "would not be going forward were it not for the tapes." Therefore, our holding in Division 1 obviates the necessity of addressing defendants' remaining enumerations of error.

*Judgments reversed. Smith, J., concurs specially. Johnson, J., concurs in the judgment only.*

SMITH, Judge, concurring specially.

"Wiretapping and surveillance are the subjects of federal and state law and both must be complied with where applicable." *Orkin v. State*, 236 Ga. 176, 179 (2a) (223 SE2d 61) (1976). "[F]or evidence obtained through state-authorized wire taps to be admissible in a state criminal proceeding, it must have been obtained in a manner not inconsistent with the requirements of *both* the federal and state laws. On the other hand, such evidence must be excluded if it was obtained in a manner inconsistent with . . . *either* the federal or the state law. [Cit.]" *Cox v. State*, 152 Ga. App. 453, 455-456 (1) (263

SE2d 238) (1979). Under the authority of *King v. State*, 262 Ga. 147 (414 SE2d 206) (1992), the state must make a showing of *strict* compliance, rather than mere substantial compliance, with the prompt judicial "sealing" requirement established by 18 USC § 2518 (8) (a). That statute requires timely transmission of wiretap evidence to the presiding judge for sealing as a prerequisite to the admissibility of such evidence. Compare *Morrow v. State*, 147 Ga. App. 395, 407 (8) (249 SE2d 110) (1978). (Substantial compliance with minimization of interception required by 18 USC § 2518 (5), based upon "objective reasonableness" standard, is sufficient.)

The state offered no valid reason at the motion hearing to explain satisfactorily the three-week delay in presenting the tapes to the presiding judge. Instead, the state relied upon an erroneous standard of compliance and upon proof of non-tampering.

Although *King v. State*, supra, was not decided until March 11 1992, one month after the hearing on appellants' motion in this case, the trial court did have the benefit of a citation to *United States v. Ojeda Rios*, 495 U. S. 257 (110 SC 1845, 109 LE2d 224) (1990), decided two years before the hearing. The majority properly finds that case applicable to this appeal.

Had the trial court merely relied upon an erroneous legal standard, I would recommend a remand in order to apply the correct standard of strict compliance with 18 USC § 2518 (8) (a). Likewise, had the state offered some reason for delay, the adequacy of which was not determined by the trial court, a remand would be appropriate. *United States v. Ojeda Rios*, supra. However the state did *not* seek to present additional evidence or argument as to any reason or satisfactory excuse for the three-week delay. I therefore agree that the trial court erred in denying appellants' motion.

The actions of law enforcement officers in rendering the tapes incapable of further recording and then placing them in sealed bags in a vault were appropriate. That is a customary and prudent practice to preserve the chain of custody. I do agree, however, that these actions alone were not sufficient to establish strict compliance with the plain meaning of the statute. It requires immediate presentation to the judge for sealing, or a satisfactory explanation at trial for the absence of the seal or any delay in obtaining it. Since strict compliance with this particular requirement is mandatory for admission into evidence of the electronic communication derived from a wiretap, the accused bears no onus to show harm or prejudice from any delay in obtaining the judicial seal. *King v. State*, supra at 148; *United States v. Ojeda Rios*, supra.

The requirement that judicial sealing is to be obtained immediately is not satisfied through storage of tamper-proof tapes sealed by the investigators themselves. Moreover, such steps, standing alone, do

not reasonably explain the three-week delay in this case. Mere "proof of non-tampering [is] not [a] substitute for a satisfactory explanation of the delay in [transmitting the tapes to the court for judicial sealing.]" *King v. State,* supra at 148 (quoting *Ojeda Rios,* supra, 495 U. S. at 264).

The trial court erred in admitting evidence of the taped conversations, and a new trial is demanded.

DECIDED JUNE 11, 1993.

*Troy R. Millikan,* for appellants (case no. A93A0151).
*Robert L. Waller III, Leslie J. Cardin,* for appellant (case no. A93A0152).
*Thomas C. Lawler III, District Attorney, Dan W. Mayfield, Assistant District Attorney,* for appellee.